**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-02383-CMA-NYW

VALLEY EQUIPMENT LEASING, INC.,

    Plaintiff,

v.

McGRIFF, SEIBELS & WILLIAMS OF OREGON, INC., and
RYAN ERICKSON,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 76.) Because Defendants have demonstrated that there are no genuine disputes of material fact on each of Plaintiff's claims such that Defendants are entitled to judgment as a matter of law, the Motion is granted.

## I. BACKGROUND

*1)    Valley, McGriff and the GSIC policy*

Plaintiff Valley Equipment Leasing, Inc. ("Valley") is a trucking company that hauls freight using both its own fleet of trucks and drivers and contracted independent owner-operators. (Doc. # 76-2 at 2, 44, 71.) Defendant McGriff, Seibels & Williams of Oregon, Inc. ("McGriff") is an insurance brokerage firm and Defendant Ryan Erickson

("Erickson") was at all relevant times a McGriff employee engaged in the business of selling and administering insurance policies and advising clients. (Doc. # 41 at 2.)

In 2009, Erickson contacted Valley to market insurance. (Doc. # 76-2 at 4, 7.) Erickson detailed a number of insurance products, and Valley shared information about the nature of its business and its insurance needs. (*Id*. at 4-5, 8, 14, 46-48, 114-115, 122.) Over the course of these dealings, Valley communicated that a particular client – Groendyke – required Valley to maintain higher than normal liability coverage limits. (*Id*. 14-15, 123, 138.) Wishing to avoid a scenario where it over-insured its entire fleet of vehicles to suit the coverage requirements of a single client, Valley directed Erickson to generate a proposal for the so-called "excess" insurance needed to satisfy Groendyke. (*Id*. at 137, 138.)

Erickson presented Valley with two options: (1) scheduled unit coverage, which would provide excess insurance for specifically identified vehicles; or (2) scheduled contract coverage, which would provide excess insurance for specifically identified shipping contracts, regardless of which vehicles were used to service the contracts. (*Id*. at 19-21, 50-51, 147.) In an email to the employee responsible for administering Valley's insurance program, Erickson summarized the options as follows:

> Following our conversation, here are the option [sic] we have for the excess:
>
> - Current carrier – can add [contracts] as you need them but will have to issue a change [sic] for this of $250 per endorsement to the policy.
> - General Star – has come back with a scheduled unit quote for 6 trucks at $21,000. This is about $7,000 less than what we have for you right now, but would be limited to the scheduled units. [ ] This option allows

> for more flexibility with your customers as it is not limited by contract.
>
> Let me know what you would like to do with this and will make it happen right away.

(*Id*. at 155.) Valley responded by assenting to Erickson's recommendation that it purchase scheduled unit coverage from General Star Indemnity Company ("GSIC"):

> Looks like [Valley President] Gary [Musgrave] understands the situation with the excess insurance and how it would be beneficial to get set up with a policy with General Star as you described. Let me know when and how you want to go about this.

(*Id*. at 153.)

In September 2010, Valley cancelled an existing scheduled contract policy and purchased the GSIC scheduled unit policy recommended by Erickson and McGriff. (*Id*. at 20, 25, Doc. # 81 at 3.) Valley renewed the GSIC scheduled unit policy in March 2011 and March 2012. (Doc. # 81 at 3.) The policy explicitly provides that coverage applies only to six vehicles listed in an attached endorsement. (Doc. # 76-3 at 237.)

At all times, Valley President Gary Musgrave made final insurance purchasing decisions. (Doc. # 76-2 at 3-4, 45.) Musgrave admits in deposition testimony that he was presented with a scheduled contract policy and a scheduled unit policy and chose the latter. (*Id*. at 53.) Musgrave further admits that he knew what a scheduled unit policy was and understood "coverage would only be provided for the vehicles that [were] actually scheduled on [the] policy." (*Id*. at 49.) Musgrave also acknowledged that it was Valley's responsibility to ensure day-to-day compliance with the GSIC policy. (*Id*. at 17-18.) Each year the policy was in effect, Valley specified in writing which

vehicles to list on the endorsement. (*Id.* at 28, 36-38, 58-59, 79, 92-93, 96-98, 196-201.)

Sometime before the 2011 renewal and in apparent contradiction of his stated understanding of scheduled unit coverage, Dave Musgrave asked Erickson what would happen if a Valley truck servicing Groendyke but not listed on the GSIC policy was involved in a wreck. (*Id.* at 55.) Erickson allegedly assured Musgrave that he would "make it work" by backdating a change to the policy endorsement to include the VIN number of any truck involved in an accident. (*Id.*) Musgrave claims Erickson made similar promises at a lunch meeting in the summer of 2012. (*Id.* at 56.) In both cases, the alleged representations were made orally and no written record of the promise exists. (*Id.* at 55, 56.) Erickson denies ever representing that he would backdate a change to the GSIC policy following an accident. (*Id.* at 116-117.)

2) *The Accident and Underlying Lawsuit*

On January 23, 2013, Valley employee and driver Sergio Silva was involved in a multi-automobile accident in Jefferson County, Colorado, while driving on the Groendyke contract. (Doc. ## 25 at 4, 76-2 at 89.) The vehicle operated by Silva was not one of the six covered by the GSIC policy. (Doc. # 76-2 at 90.)

Following the accident, five persons filed personal injury suits against Silva and Valley. (Doc. # 25 at 4.) The amount of liability exceeded the limits of Valley's primary and first layer excess liability policies, such that the GSIC policy – as second layer excess coverage – would have been triggered. (*Id.* at 5.) GSIC, however, denied

Valley's claim on the basis that the vehicle involved in the accident was not listed on the scheduled unit policy. (*Id*., Doc. # 76-3 at 358-362.)

3) *The Instant Suit*

On August 27, 2014, Valley initiated this suit against McGriff and Erickson. Valley's first amended complaint alleges claims for negligence, breach of contract, negligent misrepresentation, fraud, nondisclosure/concealment, and exemplary damages. (Doc. # 41 at 11-16.)

On October 15, 2015, Defendants McGriff and Erickson filed their Motion for Summary Judgment, arguing each claim alleged by Valley fails as a matter of law. (Doc. # 76.) On November 11, 2015, Valley filed its response. (Doc. # 81.) Notably, Valley alleged in its first amended complaint that it directed Erickson and McGriff to obtain a scheduled contract policy, and that Erickson and McGriff instead obtained a scheduled unit policy. (Doc. # 41 at 9-10.) That argument is conspicuously absent from Valley's response to the motion for summary judgment. Instead, Valley's opposition to the motion is largely predicated on Erickson's alleged representation that he would backdate a change to the policy – an act which would have constituted insurance fraud. On December 4, 2015, Defendants McGriff and Erickson filed their reply. (Doc. # 86.)

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*,

5

259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

    The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

    Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. DISCUSSION

**A. SHAM TESTIMONY**

Defendants Erickson and McGriff argue that this Court should disregard as sham testimony any evidence in the record concerning Erickson's alleged misrepresentation that he would backdate a change to the GSIC policy following an accident. (Doc. ## 76 at 9-11, 86 at 5-7.) This Court is not persuaded.

The Tenth Circuit permits an affidavit that conflicts with earlier sworn testimony to be disregarded when it constitutes an attempt to create a sham fact issue. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986). In *Franks*, the Tenth Circuit held that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his or her own prior testimony. *Id.* Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Id*.

This Court cannot conclude that the sworn deposition testimony concerning Erickson's misrepresentation is sham evidence created for the purpose of avoiding summary judgment. This Court recognizes that Valley's complaint is strangely silent with respect to any allegations that Erickson promised to backdate a change to the policy following an accident. The *complaint*, however, is not *sworn testimony* and is therefore wholly irrelevant to this analysis. Indeed, Valley has not identified any sworn

testimony with which the allegedly sham testimony conflicts. Accordingly, the Court will consider the deposition testimony as it evaluates this motion for summary judgment.

**B.     PLAINTIFF'S FIRST CLAIM: NEGLIGENCE**

To establish a *prima facie* claim for negligence under Colorado law[1], a plaintiff must show (1) a duty or obligation, recognized by law, requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure or breach of duty by the defendant to conform to the standard required by law; (3) a sufficient causal connection between the offensive conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the plaintiff. *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242 (Colo. 1987).

An insurance agent who agrees to obtain a particular form of insurance coverage has a duty to obtain such coverage or to notify the person seeking coverage of his failure or inability to do so. *Id*. at 243. Accordingly, where an insurance agent is instructed to purchase a specific policy, and instead purchases a different policy, the insured can bring a claim in negligence. *Estate of Hill v. Allstate Ins. Co.*, 354 F. Supp. 2d 1192, 1197 (D. Colo. 2004) (interpreting Colorado law); *see also DC-10 Entm't, LLC v. Manor Ins. Agency, Inc.*, 308 P.3d 1223, 1228-29 (Colo. App. 2013).

The record in this case is clear. Erickson offered Valley two coverage options: a scheduled unit policy and a scheduled contract policy. Valley specifically and explicitly directed Erickson and McGriff to procure the GSIC scheduled unit policy, and renewed

---

[1] A federal court, sitting in diversity, must apply the substantive law of the forum state. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

the policy in 2011 and 2012. Valley executives and employees admit in sworn testimony that they were provided with two options, understood the limitations of scheduled unit coverage, and directed Erickson to procure the GSIC scheduled unit policy. Valley also does not dispute that the plain language of the policy unambiguously limits coverage to a list of six vehicles, which Valley provided each year the policy was in effect. Whatever Valley now maintains concerning Erickson's alleged misrepresentations following the initial purchase of the policy, it defies credulity to argue that Erickson was directed to purchase one policy, and instead procured another.

An insurance agent also has a duty to act with reasonable care towards his insureds, but, "absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his . . . customer of provisions contained in an insurance policy . . . ." *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1171 (10th Cir. 2008) (citing *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006). "Whether a special relationship has been formed turns on whether there is 'entrustment,' that is, whether the agent or broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competencies and skills." *Id*. Colorado courts have determined that even "when an agent represents that he or she is knowledgeable about insurance coverages, and regularly in the course of his or her business, informs, counsels, and advises customers about their insurance needs," the agent has not triggered a special relationship and assumed a heightened duty of care to the insured. *Apodaca v. Allstate Ins. Co.*, 232 P.3d 253, 259 (Colo. App. 2009), aff'd, 255 P.3d 1099 (Colo. 2011).

Valley argues there is a genuine dispute as to whether a special relationship existed between the parties. (Doc. # 81 at 15-16.) This Court disagrees. Although Valley alleges that Erickson held himself out as an insurance expert and advised Valley on a number matters related to its insurance needs, these allegations are indistinguishable from facts Colorado courts have previously deemed insufficient to substantiate the "special relationship" that triggers a heightened duty of care. *See Apodaca*, 232 p.3d at 259. Even if this Court concluded that Erickson and McGriff owed a special duty to affirmatively warn Valley of the provisions contained in the GSIC policy, that duty was fulfilled. As discussed *supra*, Erickson plainly described the limitations of the GSIC policy in his dealings with Valley, and Valley understood those limitations.

Because there are no facts in the record suggesting that Erickson and McGriff breached a duty owed to Valley, Valley's claim for negligence fails as a matter of law.

C.   **PLAINTIFF'S SECOND CLAIM: BREACH OF CONTRACT**

To establish a *prima facie* claim for breach of contract under Colorado law, a plaintiff must show (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). An insurance agent who agrees to obtain a particular form of insurance coverage has a duty to obtain such coverage or to notify the person seeking coverage of his failure or inability to do so. *Bayly*, 739 P.2d at 243. An agent

who fails to do so may be liable for breach of contract. *Estate of Hill*, 354 F. Supp.2d at 1196-97).

Erickson and McGriff argue there is no dispute of material fact with respect to element three, the defendants' failure to perform. This Court agrees. Valley has failed to identify any evidence suggesting Erickson or McGriff were directed to purchase one policy, and instead procured another. In reality, the record plainly shows Valley was presented with an option to purchase either scheduled unit or scheduled contract coverage, and that Valley specifically and explicitly directed Erickson to purchase the GSIC scheduled unit policy. To the extent Valley argues that Erickson's alleged oral misrepresentation, made after the policy was initially purchased and before the first renewal, is in any way relevant to the contract analysis, this Court simply notes that any such "agreement" is void. *See Armstrong v. Gresham*, 213 P.114, 115-16 (Colo. 1923) ("An agreement to perpetrate a fraud on a third person is illegal and void.").

Because Valley directed Erickson and McGriff to purchase the GSIC scheduled unit policy, and Erikson and McGriff procured that policy in accordance with Valley's wishes, Valley's claim for breach of contract fails as a matter of law.

D.   **PLAINTIFF'S THIRD CLAIM: NEGLIGENT MISREPRESENTATION**

The tort of negligent misrepresentation provides a remedy when money is lost due to misrepresentation in a business transaction. *Western Cities Broadcasting, Inc. v. Schueller*, 849 P.2d 44, 49 (Colo.1993). To establish a claim for negligent misrepresentation under Colorado law, "it must be shown that the defendant supplied false information to others in a business transaction, and failed to exercise reasonable

care or competence in obtaining or communicating information *on which other parties justifiably relied*." *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 236 (Colo. 1995) (emphasis added). In the context of insurance disputes, "a negligent misrepresentation claim will fail if the insured has a copy of his policy and can see that the alleged oral misrepresentation contradicts the express terms of the policy." *Colorado Pool Sys., Inc. v. Scottsdale Ins. Co.*, 317 P.3d 1262, 1272 (Colo. App. 2012).

Even if Erickson represented that he would backdate changes to the policy to include uncovered vehicles in the event of an accident, the language of the GSIC policy could not be clearer: it plainly limits coverage to a list of six enumerated vehicles. (Doc. # 76-3 at 237.) Indeed, Valley acknowledges that the language of the policy is unambiguous. (Doc. ## 76-2 at 67, 81 at 8-9.)

In an effort to circumvent the clarity of the policy, Valley relies on *Terry v. Avemco Ins. Co.*, 663 F. Supp. 39 (D. Colo. 1987), where this Court applied Colorado law to determine that an insured's failure to read an unambiguous policy might not, in all circumstances, operate to bar relief. That case is inapposite. In *Terry*, the Court concluded an insured could bring a misrepresentation claim, in spite of the insured's failure to read the policy, where the insured instructed its broker to purchase a specific policy, and the broker failed to purchase that policy. 663 F. Supp. at 42. Here, the record shows that Erickson furnished Valley with a number of options for coverage, that Erickson recommended one in particular, and that Valley – after accepting Erickson's recommendation – explicitly directed McGriff to execute the GSIC policy. *See supra* at 2-3.

Because the alleged misrepresentation expressly contradicts the undisputedly plain language of the insurance policy, Valley's claim for negligent misrepresentation fails as a matter of law.

### E. PLAINTIFF'S FOURTH CLAIM: FRAUD

To establish a *prima facie* claim for fraud under Colorado law, a plaintiff must show that (1) the defendant made a false representation of a material fact; (2) the defendant knew the representation was false; (3) that plaintiff was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that plaintiff's reliance was actual, reasonable and resulted in damage. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013).

Valley's fraud claim fails for the same reason described in this Court's analysis of the claim for negligent misrepresentation. Erickson's alleged false representation runs contrary to the plain language of the insurance policy, such that Valley could not have reasonably relied on the misrepresentation. *See Branscum v. Am. Cmty. Mut. Ins. Co.*, 984 P.2d 675, 680 (Colo. App. 1999). Because Valley's reliance was unreasonable, the fraud claim fails as a matter of law.

### F. PLAINTIFF'S FIFTH CLAIM: NONDISCLOSURE/CONCEALMENT

The elements of the tort of fraudulent concealment are (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed; (2) the defendant's knowledge that the fact is being concealed; (3) the plaintiff's ignorance of the fact; (4) the defendant's intent that the plaintiff act on the concealed fact; and (5) the plaintiff's action on the concealment resulting in damage.

*Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991); *see also Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016).

With respect to elements one and two, there is no evidence in the record suggesting that Erickson or McGriff concealed any fact from Valley. To the contrary, Erickson explicitly described the limitations of scheduled unit coverage in his correspondence with Valley. *See supra* at 2-3. Though Valley alleges that Erickson later *misrepresented* what McGriff would do should an uncovered vehicle be involved in an accident, there are no facts evincing concealment.

With respect to the third element, Valley cannot credibly maintain that it was ignorant of the scope of the GSIC policy. The record is littered with evidence demonstrating that Valley understood the nature of scheduled unit coverage, was offered competing options and specifically and explicitly authorized the purchase of a scheduled unit policy. *See supra* at 2-4. Moreover, the plain language of the policy unambiguously limits coverage to a list of six enumerated vehicles, a fact Valley does not dispute. (Doc. ## 76-2 at 67, 81 at 8-9.); *see also Spaur v. Allstate Ins. Co.*, 942 P.2d 1261, 1265 (Colo. App. 1996) ("[T]o the extent that plaintiff argues that defendant has an obligation to point out the coverage limits . . . at the time the policy was purchased, we . . . disagree . . . . [T]hese terms are unambiguous, and it is the policyholder's responsibility to read the policy.").

Because there are no facts suggesting that Erickson or McGriff engaged in concealment, and because Valley cannot credibly maintain it was ignorant of the limitations of the GSIC policy, Valley's claim for concealment fails as a matter of law.

### G. PLAINTIFF'S SIXTH CLAIM: EXEMPLARY DAMAGES

Under Colorado law, "the award of exemplary damages is not a separate and distinct cause of action, but is permitted only in conjunction with an underlying and independent 'civil action' in which actual damages are assessed for a legal wrong done to the injured party." *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 213 (Colo. 1984); *see also* Colo. Rev. Stat. § 13-21-102.  Because this Court has concluded each of Valley's substantive claims fail as a matter of law, Valley has no claim for exemplary damages.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Summary Judgment (Doc. # 76) is GRANTED.  It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE, with costs awarded to the prevailing party.  It is

FURTHER ORDERED that Defendants' Motion for Sanctions for Spoliation of Evidence (Doc. # 102) is DENIED AS MOOT.  It is

FURTHER ORDERED that this Court will retain jurisdiction to adjudicate Defendants' Motion for Attorney Fees and Costs Related to Recovery of Plaintiff's ESI (Doc. # 74), despite the dismissal of this case.

DATED: April 28, 2016

BY THE COURT:

*[signature: Christine M. Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge